J. H. JOHNSON & CO. ET AL. V. I. HEIDENHEIMER ET ALS.

(Case No. 2129)

1. FRAUDULENT ATTACHMENT SUITS—JUNIOR ATTACHING CREDITORS—INTERVENTION—A fraudulent diverson of a debtor's property may be as effectively accomplished by a collusive suit as by a direct transfer; and to prevent the illegal result of such a suit between an attaching creditor and the debtor, a junior attaching creditor may intervene in the case and protect his interest in the attached property, by showing that the plaintiff's demand is fictitious. (Citing Nenny *v.* Schulter, 62 Tex. 328.)

2. SAME—ATTACHMENT LIEN—PLEADING—An attachment secures to the creditor such a lien as entitles him in equity to have all the obstructions to its fair enjoyment removed, and the creditor having a lien upon the property which he seeks to disencumber, need not aver the insolvency of the debtor.

3. CASE DISTINGUISHED—This case distinguished from the case of Grabbenheimer *v.* Rindskoff, 5 Tex. Law Rev. 263.

APPEAL from Washington. Tried below before the Hon. J. B. McFarland.

Isaac Heidenheimer brought suit, December 2, 1885, against Chas. Wenar & Co., for debt, and sued out an attachment, which he caused to be levied on a stock of goods, wares and merchandise found in their store in Brenham, Texas. Other attachments were levied on the same goods by the plaintiffs in error, on December 3, 1885, and on subsequent days during said month.

By virtue of an order of the district judge, made in chambers, on application of the plaintiffs in this suit and Bassett & Bassett, who were plaintiffs in another attachment suit against the same parties, the goods were sold by the sheriff, and the net proceeds thereof, viz., $13,507.62, were paid into the registry of the court.

On March 6, 1885, J. H. Johnson and others, who were junior attaching creditors of Chas. Wenar & Co., filed their petition of intervention in this suit, which was substituted by their amended petition, filed March 12, 1885, and attacked the attachment of Heidenheimer for fraud, and his alleged indebtedness as fictitious and fraudulent, and asked that the plaintiff's attachment be set aside and postponed as to their writs of attachment and indebtedness.

The petition of intervention, after setting out at length the proceedings under which the several writs of attachment were issued, levied and foreclosed, showing that writs were levied, and the order of the levies, etc., and the sale of the goods, etc., charges, that the attachment of I. Heidenheimer was collusively instituted and prosecuted at the special instance and request of defendants Wenar and Rosenthal, with intent to delay, hinder and defraud the creditors of Chas. Wenar & Co., and especially the intervenors, of their lawful demands, all of which was known to plaintiff. That the claim sued on was not then, nor at the time of the institution of the suit, a just, valid or legal claim against Chas. Wenar & Co., but that it was and is, either wholly or in a large part, fictitious, pretended and colorable only, and not based upon any valid or legal consideration, and was contrived and sued upon with the intent and purpose, on the part of the plaintiff, and by collusion with the defendants, to shield them, and absorb the property, and thereby hinder, delay and defraud the intervenors of their just debts against the defendants.

March 7, 1885, judgment by default was rendered in favor of the plaintiff against the defendants Chas. Wenar & Co., they having failed to answer.

Afterwards, on March 21, 1885, came on to be heard the plaintiff's plea in abatement to the petition of the intervenors, claiming his right to be sued in Galveston county, where he resided; also came on to be heard his motion to dismiss the intervention, and his exceptions to the intervenors' petition. The court overruled the plea in abatement, but sustained the motion to dismiss the exceptions, and dismissed the petition of intervention, to which ruling of the court the intervenors excepted and gave notice of appeal.

The intervenors claimed that the attachment was void as to them, and that their indebtedness should first be satisfied out of the proceeds of the sale of the attached property, then in the registry of the court. They asked leave to intervene in the suit, and offered to comply with such terms as the court might deem it equitable to impose, and to execute such bond as the court might require; and prayed judgment that the plaintiff's attachment be set aside and postponed

as to their writs of attachment and indebtedness, and that the fund in court be ordered paid to them in the order of their attachments, until the same should be satisfied, or the fund be exhausted.

The insolvency of the defendants was not alleged.

The court then made final its judgment by default, and directed the clerk to pay the plaintiff the amount of his judgment out of the money in the registry of the court. The intervenors requested the court to make some order as to the disposition of the money during the pendency of the appeal by them to the supreme court, and offered to execute a bond that the same might be retained in the registry of the court, but the court refused to do so, and directed payment to plaintiff.

The case is now before this court on writ of error sued out by the intervenors in the court below.

The fifth assignment of error made by the plaintiffs in error will present the questions. It is as follows:

"5. The court erred in dismissing the petition of intervention of J. H. Johnston & Co., A. H. Motley, Delgado & Co., Huber Wack Milling and Live Stock company, Hartwell & Chambers, F. X. Burton & Co., D. H. Wilson & Co., Stuart, Ralph & Co., and Brown & Bro., and in rendering judgment against them."

*Garrett, Searcy & Bryan, J. T. Swearingen* and *R. S. Tarver,* for plaintiffs in error, on the proposition, that the intervenors, by reason of their interest in the property, acquired by virtue of their attachments, had the right to intervene in the suit, and attack and defeat, if they could, the prior attachment of the plaintiff as based on a fraudulent and fictitious demand, cited: Nenny & White *v.* Schulter & Co., 62 Tex. 328; Joseph Peters Furniture Co. *v.* Dickey, 4 Tex. Law Rev. 303; Peiser *v.* Peticolas, 50 Tex. 638; Grabenheimer *v.* Rindskoff Bros., 5 Tex. Law Rev. 263; Sayles' New Treatise, sec. 606, and authorities cited; Drake on Att., 5 ed., sec. 273, et seq.

*McLemore & Campbell,* for defendant in error, that the right of a junior attaching creditor to intervene in a pending suit, wherein the property of the alleged debtor has been seized, depends upon whether such junior attaching creditor state a case in his petition, from which the court may see that unless such intervention be allowed the claim of such junior attaching creditor will be jeopardized by allowing the attached property to be subjected to the prior attachment; and that the interest in the attached property which arises merely out of the junior attachment is not sufficient to entitle the junior attaching

creditor to intervene in the original suit in attachment, cited: Nenny & White *v.* Schulter, 62 Tex. 328; Ragland *v.* Wisrock, 61 Tex. 391; Eichoff *v.* Tidball, 61 Tex. 421.

ROBERTSON, ASSOCIATE JUSTICE.—A fraudulent diversion of a debtor's property may be as effectively, and is as frequently, accomplished by a collusive suit as by a direct transfer, and both means are denounced by the statute in the same terms. R. S., art. 2465. To prevent the illegal result of such suits, a subsequent attaching creditor is permitted in our practice to intervene in the case and protect his interest in the attached property, by showing that the plaintiff's demand is fictitious. Nenny *v.* Schulter, 62 Tex. 328.

This right of intervention is the form the creditor's remedy in equity takes in our blended system. He will be entitled to intervene in the prior attachment suit whenever he would be entitled in equity to question the validity of a transfer of the goods attached, made by the debtor to the plaintiff in attachment. Of course, the intervenor must aver the existence of all the conditions entitling him to the remedy he seeks. Whether the insolvency of the debtor is one of these conditions, depends upon the intervenor's interest in the property charged to be fraudulently attached.

If he has no interest in the particular property, he has no right to interfere with his debtor's disposition of it, unless he shows that he has no other means of satisfying his demand. His right in equity depends upon the absence of all legal remedy, and he is generally required to illustrate his situation, by an exhaustion of his legal remedies—the prosecution of his claim to judgment and the issue and return of an execution barren. But if he has a lien upon the particular property, as by subsequent attachment, the jurisdiction of equity and his right to intervene are not dependent upon the absence of a remedy at law, but upon the existence of an independent right—a lien—a favorite of chancery. The general creditor loses no right, legal or equitable, by the misappropriation of his debtor's property as long as enough remains to satisfy his demand. But the lien creditor has a right to be satisfied out of the thing charged with his debt, and that right is improperly defeated by any wrongful diversion of the thing. The subject of the lien is his primary source of satisfaction, and, to entitle him to proceed against it, it is not necessary that he should show that no other source exists. The attachment secures to the creditor such lien as entitles him in ·equity to have all obstructions to its fair fruition removed, (Ward *v.* McKinzie, 33 Tex. 297; note 4 to sec. 1415 of Pomeroy's Eq.) and the creditor having a

lien upon the property he seeks to disencumber need not aver that the debtor is insolvent.

We do not consider the case of Grabbenheimer *v.* Rindskoff (5 Tex. Law Rev. 263) in conflict with these views. The issues of fraud in the prior attachment having been disposed of adversely to the intervenors in that case, the only controversy left was as to the priorities between individual and firm creditors, and it was held that the firm creditors had no superior right, unless the partnership was shown to be insolvent—that, unless insolvent, the partnership assets do not constitute an equitable fund charged with the payment of partnership debts.

The omission of the averment of the debtor's insolvency in the appellant's petition of intervention was not a defect—the demurrer, which was sustained, should have been overruled, and the judgment dismissing the petition of intervention was error, and is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 15, 1886.]