## J. G. MALLETTE ET AL. V. FORT WORTH PHARMACY COMPANY ET AL.

### Decided May 27, 1899.

**1. Attachment—Insolvent Corporation..**

A creditor of an insolvent corporation may fix a lien upon its property by attachment and thereby obtain a preference over other creditors, provided it has not ceased to carry on its business in the usual course of trade.  Following Bank v. Manufacturing Company, 15 ·Texas Civil Appeals, 631.

**2. Same—Affidavit Not Traversable.**

The affidavit for an attachment is not traversable for the purpose of abating the writ and vacating the lien.

**3. Same—Vacating.**

A subsequent lien creditor is not entitled to have a prior attachment vacated upon the sole ground that it was sued out without reasonable grounds for believing the affidavit for attachment to be true.

**4. Costs—Insolvent Corporation—Receivership.**

Creditors of an insolvent corporation who have brought an unsuccessful suit to vacate attachment liens as fraudulent and collusive are properly taxed with the compensation of the receiver appointed in such suit at their instance.

APPEAL from Tarrant.   Tried below before Hon. IRBY DUNKLIN.

*Capps & Canty* and *McCormick & Spence,* for appellants.

*S. T. Camp* and *Greene & Stewart,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—On the 9th day of January, 1897, and for some time prior thereto, the Fort Worth Pharmacy Company, a private corporation, was carrying on a retail drug business in the city of Fort Worth.   On that day, and while it was yet a going concern, though insolvent, its stock of drugs was seized under attachments levied at or about the same time, which prevented it from further prosecuting its business.   The State National Bank of Fort Worth, E. W. Childress, A. C. Walker, the Carter-Battle Grocery Co., and N. N. True were the several plaintiffs in these attachment suits, and their attachments were levied in the order named.   Each of these attachments was sued out upon the ground that the pharmacy company was about to dispose of its property with intent to defraud its creditors.

On January 14, 1897, J. G. Mallette and other creditors of the

pharmacy company brought this suit in behalf of themselves and all others similarly situated, against the company, its officers, stockholders, and the attaching creditors, causing its assets to be placed in the hands of a receiver, and seeking to have the attachment liens vacated upon the ground of fraud and collusion, in order that the assets might be distributed among all the creditors alike.

When the case came on for trial, by agreement of the parties, the issue of fraud was submitted to a jury and other issues of fact to the presiding judge, and upon the finding of the judge and the verdict of the jury judgment was entered against plaintiffs below. Hence this appeal.

We adopt, as amply sustained by the evidence, what was found by his honor, the substance of which is sufficiently given in the foregoing statement.

We are also of opinion that the verdict must be accepted as establishing, there being sufficient evidence to sustain it, (1) that there was no collusion between the Fort Worth Pharmacy Company and the attaching plaintiffs or any of them, and (2) that if the several affidavits for attachment were false, the parties making them did not know them to be false.

We further find that the evidence tended very strongly, and without conflict, to show that the alleged ground for the attachment did not exist; and whether the attaching plaintiffs or any of them had or had not reasonable grounds for believing it to exist, was a controverted question of fact raised by the evidence, the preponderance of which tended to show that they had not.

*Conclusions of Law.*—1.  That one or more creditors of an insolvent corporation may fix a lien upon its property by attachment, and thus obtain a preference over other creditors, provided it has not ceased to carry on its business in the usual course of trade, must now be accepted as the law in this State, whatever may be the rule elsewhere. Bank v. Mfg. Co., 15 Texas Civ. App., 631, and cases there cited and reviewed by Judge Fly, a writ of error having been denied in that case. The facts above stated bring this case clearly within that rule.

2.  That the affidavit for attachment is not traversable for the purpose of abating the writ and vacating the lien has been the recognized rule in this State since the decision in Cloud v. Smith, 1 Texas, 611. In the latest case reaffirming it, that of Gimbel v. Gomprecht, 89 Texas, 497, Justice Brown says: "The validity of the writ of attachment does not depend upon the truthfulness of the allegations made in the affidavit or the petition, but upon the compliance with the statute in making the affidavit." In many jurisdictions a different and possibly better rule prevails, but we must follow the rule so early adopted and long followed in Texas.

Subsequent lien creditors, in the absence of fraud and collusion between the prior attacher and the debtor, have no rights in this respect superior to those of the debtor himself. They are, however, permitted

to intervene and show that the older attachment is based upon a fictitious or fraudulent demand, or that the attachment is otherwise collusive, and thus vacate it. Nenney v. Schulter, 62 Texas, 377; Johnson v. Heidenheimer, 65 Texas, 263.

It seems also to have been held in this State that a subsequent lien creditor may intervene and have the prior attachment vacated, where the creditor suing it out knew his affidavit to be false when he made it. Bateman v. Ramsey, 74 Texas, 589; Shoe Co. v. Harris, 82 Texas, 274; Kollette v. Seibel, 26 S. W. Rep., 863. Whether this holding is not at variance with the rule that the affidavit is not traversable as to the grounds upon which the attachment is sued out, may be doubted. But the case was submitted to the jury in accordance with this holding, and we need not discuss that question.

We know of no case going so far as to hold that a subsequent lien creditor may vacate the prior attachment upon the sole ground that it was sued out without reasonable grounds for believing the affidavit for attachment to be true. Yet the sixth error is assigned to the refusal of the following requested instruction embodying that proposition: "You are instructed that if you believe from the evidence that the defendant Fort Worth Pharmacy Company at the time the several attachment writs were run by the defendants was not in fact about to dispose of its property for the purpose of defrauding creditors, and that said defendants (other than defendant company) or their agents who made the affidavits for the attachment writs in question did so without reasonable grounds for believing that the said defendant pharmacy company was about to dispose of its property with the intent to defraud its creditors, then you will find for the plaintiffs against such of said defendants as you may believe from the evidence had not such information as would lead a reasonably prudent person under the same circumstances to believe that the grounds mentioned in said affidavits for attachment did in truth exist."

While a jury might infer from the want of probable cause the existence of guilty knowledge or a fraudulent purpose in suing out the writ, the law does not require them to do so. That would be an inference or presumption of fact, and not a conclusion of law. Willis v. McNeill, 57 Texas, 465; Biering v. Bank, 69 Texas, 599; Kaufman v. Wicks, 62 Texas, 234.

The charge was therefore under the well established practice in this State, properly refused, unless it be the law that a defendant or subsequent lien creditor may have the attachment vacated where the attacher, to quote from the refused charge, "had not such information as would lead a reasonably prudent person under the same circumstances to believe that the grounds mentioned in said affidavit for attachment did in truth exist." That is to say, unless it be the law that a creditor may be thus deprived of his prior lien because he made a mistake in suing out the attachment, which he might have avoided by acting with reasonable prudence.

We know of no authority for such a proposition. True, a false statement made without knowing it to be so is treated as fraudulent where it is made to influence the conduct of one who is misled thereby to his prejudice. Mitchell v. Zimmerman, 4 Texas, 79; Henderson v. Railway, 17 Texas, 576.

But it has never been held, so far as we know, that the mere doing of a lawful thing—such as suing out an attachment—in a negligent manner is fraudulent. Negligence is not fraud, nor is it one of the grounds of equity jurisdiction. A suit for damages has too long been held to be an adequate legal remedy for the consequences of a negligent or merely wrongful act, not producing irreparable injury, to admit of a discussion of equitable remedies in that connection. The pharmacy company, or its directors or receiver, or possibly its general creditors, might have maintained such an action for any injury done in this case by the wrongful attachments, whether negligently sued out or not. But such is not this suit, the purpose of which was to vacate the attachment liens and distribute the assets covered by the liens ratably among all the creditors. There were no such allegations of damage or the extent thereof as to warrant any recovery upon that theory. Indeed, the petition was not drawn to present such an issue, nor is any ruling complained of on appeal involving that phase of recovery.

These conclusions, together with our conclusions of fact, cover the main questions raised.

3. The errors assigned to the ruling in the admission and exclusion of evidence are overruled without discussion, as they are obviously without merit.

4. The remaining assignments complain in different forms of the court's action in adjudging the costs. There was certainly no error in imposing upon appellants the costs of the suit they lost. The costs incident to the receivership were divided, and we are not prepared to hold that this was not equitably done. Whatever would have been a charge upon the assets seized under attachment without the appointment of a receiver, including the expense of taking care of and selling the property, was not taxed against appellants, but the compensation allowed the receiver was, which was within the court's sound discretion. Land Co. v. Bindle, 11 Texas Civ. App., 262.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.