LipsooMb, J.
Two positions have been relied on in this court to reverse the judgment. 1st. That the court erred in overruling the plea in abatement, filed by the defendant in the court below. 2d. The court erred in rendering judgment, that the property levied on should be sold. On the first point, whether the facts contained in the affidavit are traversable, there has been much diversity of opinion. The authority of adjudicated cases seems to be pretty well balanced, and both sides of the question are supported by decisions in every respect equal in the degree of confidence to which they are entitled; neither can claim superiority. We must, therefore, decide in the way we may think most in harmony with legal principles and best calculated to promote the ends of substantial justice. The ques tion is beset with difficulties on both sides. On the one, of leaving cases of exceeding hardship and oppression, without affording in every conceivable case an adequate remedy; and on the other, of presenting issues hard to be disposed of on known principles of law, and opening a door to interminable litigation of corrupt intention, and the various and minute circumstances, conducing to the conviction of the truth of the fact of belief in the mind of the plaintiff, at the time of making the oath. We acknowledge the importance of these considerations. It is some relief, though, that from the fallibility of all law-makers and jurists, that it is wholly impossible to legislate for every extreme case, or for the court so to adjudicate rules of law, as to leave no possible ground for the occurrence of hardships. To reason then, from extreme cases, would be equally absurd and unproductive of good results to the mass of those to be acted on. To provide against fraud and oppression on the part of the plaintiff, in availing himself of the privilege of the process of the attachment, the same law that gives that privilege has thrown around its exercise, what were doubtless supposed at the time, to be ample and sufficient guards and protection of the rights of the defendant. If they have proved by experience to be insufficient, the legislature will, no doubt, in its benignant regards to the rights of the citizen, impose other restrictions *(431) and create additional safeguards; or tbe right that cannot be exercised without opening a door for so much injury will be withdrawn.
The conditions on which an attachment may be sued out, and the limitations intended to prevent an abuse of the process will be considered.
They are, first, the affidavit; by which the defendant has the guai*-anty that if the conscience is not seared against the consequences of present and future punishment for perjury, this process will not be abused. If the affiant has, by a habitual bad life brought himself to the fatal conclusion, that there is no God to reward truth and avenge falsehood, he cannot shut his eyes to the fact that there are laws to punish in this life the crime of perjury. But it will be admitted, that notwithstanding the awful consequences of false swearing, men may sometimes be found and that too, on a comparatively trifling temptation, to hazard all the consequences here and hereafter. And it requires a considerable degree of Christian charity — when we see an oath taken — that a man is about removing himself and his slaves from the limits of the republic — at a time when there was not a spot upon the globe inhabited by civilized men, to which he could carry them and retain his dominion by lawful title — to believe that the affiant is dnly impressed and properly appreciates the obligation of an oath. Yet, when we consider by what influences an uninformed mind maybe operated on, and to what preposterous conclusions he may be led, it is more charitable to say that he was ignorant and not so wholly depraved. The next is the bonds the plaintiff is required to give, to answer in damages to the defendant in double the amount of the sum sworn to be due, conditioned that the plaintiff shall prosecute his attachment to effect, and pay the defendant all such damages as he may sustain by the wrongful or vexatious suing out of such attachment. See Acts of 2d Congress, 2d Sess. p. 90, sec. 3. Now, if there had been no bond given, the defendant would have had a right of action, if the attachment had been sued out to vex or harass him, and he had been injured thereby; but the party suing it out might have been insolvent, and not able to make compensation in the bond. As security against such a contingency, a person not able to give the bond cannot avail himself of the attachment process. We will not undertake to say whether the defendant could, in reconvention in the suit by attachment, set up the damages he had sustained by the wrongful suing out of the attachment. It is believed that this can be done in the courts of Louisiana, and if, under our statute, the plea of recon-vention could not be received in such cases, it is competent for the legislature to so modify it as to permit such defense. Suits brought for *(432) the wrongful issuing of attachments, and the verdicts of intelligent and honest juries would contribute much more to protect the defendant from the abuse of the attachment process than anything that could be done here. I recollect a case many years ago, when a lesson of this sort was attended with a most salutary influence. A merchant of great respectability had left for the north to purchase goods; and in his absence, one of the banks sued out an attachment and had it levied on his stock of goods; and, although the store was not closed a moment, his friends having replevied, yet on his return he sued the cashier, and having a good intelligent jury of men, who knew the value of credit to a merchant, and how well calculated the suing out an attachment against him, as soon as it was heard, would be to destroy that credit, returned a verdict in his favor for a much larger amount than his debt to the bank. Such are the safeguards the law has thrown around the rights of the defendant, when it gives the plaintiff the privilege of resorting to the process of original attachment.
It will not be improper to give a brief history of this question in a sister state, with whose judicial history and legislative enactments I may claim to have some acquaintance. In the state of Alabama, from the first organization of her courts down to the time of the decision of Massey v. Brown, the prevailing, if not the uniform rule of decision had been to refuse a plea traversing the plaintiff’s affidavit. That decision was made by a divided court. Three out of the seven judges were for adhering to the practice that had been considered as well settled and on the safest grounds The decision never did meet the decided approbation of the profession, and such were the litigation and vexatious issues resulting from it, that it attracted the attention of tho legislature and the defense was inhibited by the legislature, and so firmly had public opinion taken ground against it that when some years after an effort was made in the legislature to reinstate it, it was met in limine and the usual courtesy of a reference to the appropriate committee was refused. The experiment had satisfied most observers, whether professional men or otherwise, that when they undertook to try in a collateral issue what was the real intention of the affiant, that it opened the door to an infinitude of circumstances, exciting angry passions and disturbing the harmony of society, to an extent far beyond any supposed injury that was likely to arise under a different rule. The objection is good on principle that it presents an issue foreign from the subject of the suit, and an issue in which the party whose oath has been impeached is required to prove the difficult fact, that he really did believe in the truth of what he had sworn. Again, in our practice, the attachment goes sometimes *(433) band in hand with the eitation for personal service on the defendant, when it is founded on the fear of a removal of the effects of the defendant from the republic, and so it was in the present case. The defendant was served personally with citation, simultaneously with the execution of the process of attachment. The plaintiff certainly had cause of action, if not for the auxiliary aid of attachment for his ultimate security; the plea in abatement did not reach this right. The objection, if it existed at all, did not make a defense to the plaintiff’s right of action, but only to the auxiliary writ. We believe, on the whole, that the plea in abatement was properly rejected and that the matter of the affidavit is not traversable in the action.
We will proceed to the second part. The appellant contends that the judgment of the court below was erroneous in directing the sale of the slaves levied on, because they had been replevied, and that the effect of the judgment of the court was to deprive him of the benefit of pointing out other property. The decision on this objection must depend on the character of the action. If it was a proceeding in rem, it would seem that the judgment was right; if it was personam, the execution would issue and be subject to our law of executions, which gives the defendant in execution the right to point out property. In proceedings in rem the property alone is acted upon by the judgment of the court, and the judgment creates no lien on any other property, nor can it have any effect on anything else. The property is always considered as potentially in court, by being in the possession of the marshal or sheriff, and on a final judgment the court may make an order of sale if it has been seized upon, for the purpose of paying a debt. In case of .an original attachment, until the property is replevied, the proceeding is so far in rem and the property is. potentially in possession of the court and if it should remain in this; condition until judgment had been obtained, it would certainly be snbject to the order of the court, and that order might be to sell it in discharge of the debt. But it is believed to be otherwise when the defendant replevies the property and gives bond; the property then passes from the possession of the sheriff and is no longer actually or potentially in possession. The remedy is then on the bond, but this will not be a proceeding in rem. The case before us is still one of' stronger features. We have been considering one where the process was against the property of the defendant alone, but in the case before us the plaintiff proceeded by double process; the one against the-person, praying that he be cited to answer his complaint of indebtedness, and the other against his property. Both processes were- served at the same time. It may be doubted if in this case at any time, the-. *(434) proceedings could be said to be in o'em. It would seem by analogy that the attachment was only an auxiliary to secure an ultimate satisfaction of the debt, against the apprehended removal of it from the republic. The attachment is predicated on the inability to have the ordinary process served and the petition presents this contradiction, that the ordinary process cannot be served, and yet prays that it be served. It is doubtful whether it was the intention of the legislature in the attachment law to allow the extraordinary process of attachment when the ordinary process could be served. No objection was made of this character in the court below and we must take it as we find it. We find the defendant brought into court by ordinary process of the court as in a suit in the common form. We find that another process has been levied on his property. Under these circumstances, can it be said that the judgment against him would have been in rem, even if he had not replevied the property ? We believe not. The attachment could not draw to it more consequence or a greater legal effect than an attachment sued out (pending a personal action) qxáa timet, the defendant, before he (plaintiff) can have his judgment, will remove his property out of the limits of the republic. In such a case there would be no judgment on the property. It would be in personam and the execution would run against the goods and chattels of the defendant, and no particular judgment would be rendered against the property seized on the attachment. If it had not been replevied the sheriff would subject it to execution; but if it had been replevied, tbe plaintiff could only recur to the replevy bond in the event of a default of property of the defendant to satisfy the execution. From analogy this seems to be the course that should be pursued in the case before us. The judgment should not have been for the sale of the property that had been levied upon; it should have been general and execution should have run against the goods and chattels (not any particular goods and chattels) of the defendant.
It is not necessary to say anything about the supposed lien > the attachment creates on the property levied on, because if it was ..admitted that it did give a lien, it would not follow as a necessary con..sequence that the defendant would be deprived of the right to point out other property to be levied on. We are bound to give effect to the law subsequently passed to the attachment law, that gives the defendant the right to point out other property, if we can do so; and this can be .done without affecting the supposed lien the plaintiff had acquired. The plaintiff has a lien on all the property of the defendant in ordinary cases at the time he issues his execution; yet this does not deprive .the defendant of the right of designating property *(435) first to be levied on. The postponing the levy until an effort has been made to sell other property to satisfy the execution does not release it. But it may be well questioned if any such lien exists after the property has been replevied. The replevy bond may be considered, and no doubt was considered to have the effect of special bail. The security in the bond became special bail.
The execution should have run as in ordinary cases, and in default of property of the defendant, the plaintiff had then recourse to the bond. There was error in rendering judgment for the sale of the property levied on.
The counsel for the appellant presents in his brief exceptions to the proceedings had after the judgment. This appeal is from the judgment, and we cannot look to anything subsequently done. Such objection must be presented by an appeal from another and distinct judgment.
Because there is error in rendering the judgment for the sale of the property after it had been replevied, the judgment must be reversed, and rendered for the debt in the usual form, and appellee pay cost.