Hr. Justice LipscoMB
delivered the opinion of the court, Mr. Justice Wheeler not sitting in the cause.
The appellant contends that the court erred in sustaining the plaintiffs’ demurrer to the pleas in abatement.
The 5th section of the act to establish the jurisdiction and powers of the district courts, acts 1836, provides that
“No person shall be sued out of the county in which he may reside except in the following cases;” the statute then designates ten exceptions which need not be recited, as the present action very clearly does not come within any of them. And it is beyond controversy that the appellant was not liable ■to be sued in the county of Galveston, if it be true, as pleaded *242 “by him, that he was a resident citizen of Nacogdoches county when the suit was instituted. The appellee, however, contends that the plea in abatement was bad, because it was not sworn to.
The plea sets forth the fact of residence in the county of Nacogdoches at the time that suit was commenced, and goes into some complaints of the hardship of being sued out of the county of his residence, and other matters superfluous; and the defendant’s name is subscribed to it; and the attestation of the clerk is in the following words, i. e.: Sworn to and subscribed before me, this 5th day of October, 1843. Samuel Hinton, Deputy Clerk. Whether this was a sufficient affidavit of the truth of the plea in abatement will now be inquired into. The 9th section of an act to regulate proceedings in civil suits, acts 1840. p. 89, is in the words following, i. e.: “No plea in abatement shall be admitted or received, unless the party offering the same shall prove the truth thereof by oath or affirmation, as the case may require.” It seems there is no form of an oath prescribed; the plea must be proved, though by the party offering it. In this case the clerk certifies that the plea was “ sworn to and subscribed,” for we can refer his attestation to nothing else but the plea; it is inserted at its conclusion, and is followed by his certificate that it was filed on the same day. Now, it would not be reasonable to conclude from the attestation that he had sworn to anything else but the truth of the plea. It is probable that the clerk, in administering the oath, put it in this way: you do solemnly swear that the plea is tribe; and if so put, the attestation as above would be sufficient. We must give to the attestation a common sense interpretation; and in so doing we are bound to say the defendant, in offering the plea, proved its truth by his oath. It is sufficiently definite to sustain an indictment for perjury, if the facts sworn to are not true; and we may furthermore add, that this is believed to be the usual, mode of verifying such pleas; that it is not very formal is true, but it is equally true that it substantially contains all that the law requires.
It is, however, further contended by the appellee in support of the judgment of the court below, that the 5th section of *243 the act to establish the jurisdiction of the district courts does not apply to a case like the present, but only to cases where the suit was against the person of the defendant, and not to one in r&m; and he insists that the benefit of the attachment would be lost if the property of the defendant could not be seized wherever it could be found. How far this argument ab inconvenienti would avail if addressed to another department, is not known, but certain it is that it can have no influence here; it is true, that where the interpretation of the law is doubtable, and admitting of two meanings, the inconvenience of the one and the advantages of the other would have its influence; but admitting it so far would be to tread on dangerous ground; it would have very much the appearance of making instead of interpreting the law. If a law were expressed with so much ambiguity, or different acts were so conflicting as to leave the meaning of the legislature doubtful, we might well pause and consider, if to leave so much uncertainty to be explained by future legislation would not be our province. High judicial sanction has, however, given great latitude to courts in such cases; but such precedents are believed to have been derived from a system of jurisprudence where the boundaries of the legislative and judicial departments were not very well defined. On this occasion, no such difficulty is believed to be presented.
That it is the duty of the court to give both laws effect, if a fair interpretation will enable us to do so, will not be denied. This can be done by requiring the suit to be brought in the county of the defendant’s residence, whether it is against his person alone, or, like the present, against both the person and property. This is as much a suit as if it had been against the person only; and the plain interpretation of the language of the section is, that the defendant shall not .be sued out of the county of his residence; and suit by attachment is not made an exception, although cases of exception were deliberately thought of and provided for by the section above cited.- It may be further remarked, that we decided that suits of this description, pursuing a double remedy, cannot be strictly called proceedings in rem — that it *244 is only used as auxiliary to tbe ordinary process. See Cloud v. Smith, 1 Tex. 611. If, then, the principal, which is the ordinary process, fails, it would follow as a necessary corollary that its auxiliary would likewise fail.
It would be extending liberality of construction far beyond legitimate bounds, in our opinion, to repeal, the provision of the 5th section of the act cited, by implication, for the purpose of giving an effect to the attachment law not warranted by its language. If we could feel authorized in any case to depart from the plain, literal interpretation of the law, this certainly would not be a fit occasion for the exercise of such power. Attachment laws have in all courts- been subjected to the strictest scrutiny, as being a departure from ordinary courses of proceeding, and productive of much hardship, and. resulting not unfrequently in great sacrifices to the defendant. The record, in the case before us, shows but too clearly that this is no exception. It shows that sixty-nine bales of cotton, in the warehouse of the plaintiff, belonging to the defendant, had been attached and sold for the small sum of eight hundred and seventy-two dollars — that from this sum had been deducted, for costs and charges, the amount of one hundred and sixty-six dollars and eight cents. And all of this sacrifice of property and cost effected by a forced sale, before a judgment of the court had fixed the defendant’s indebtedness, and before, in all reasonable probability, he knew of the suit and the seizure or sale of his property. Had he been sued in the county of his residence, to say nothing of the sacrifices in the sale of the cotton, the cost and charges could not have amounted to more than one-fourth of what he has been compelled to submit to; the sheriff has not disclosed the name of the purchaser: it is, however, no unreasonable presumption, that it was the plaintiff. Can it, then, for a moment, be contended that a law so open to abuse, and so productive of mischief, has any claim to invoke a liberal construction at the hands of a court governed by sound principles in deciding on the rights of the citizen? Can we be called upon to repeal, by implication, the privilege of the citizen of being sued in the county of his residence, and to place it within the power of a *245 factor who receives the cotton of. the planter, to sacrifice his property in this way? Surely not. Sequestrations and attachments have, again and again, ruined even a successful defendant; he may gain the suit, but his property is absorbed and lost to him.
We believe that the court below erred in sustaining the plaintiff’s demurrer to the defendant’s plea; that suits of this sort cannot be sustained against the defendant out of the county of his residence; and that the judgment of the court below must be reversed, and rendered in favor of the defendant in the court below.