GUS. LEWY & CO. V. JOSEPH FISCHL.

(Case No. 2080)

1. EVIDENCE—WITNESS—FORMER STATEMENT—Where a design to misrepresent, from some motive of interest, has been imputed to a witness, a former statement, made by him at a time when the supposed motive did not exist, is admissible in confirmation of his evidence.

2. SAME—ATTACHMENT—TRIAL OF RIGHT OF PROPERTY—BURDEN OF PROOF—FRAUDULENT INTENT—AFFIDAVIT AND JUDGMENT IN ATTACHMENT, WHEN NOT EVIDENCE— When an attachment has been levied upon property in the possession of a third person, the burden of proof is upon the attaching creditor to show that the property was subject to the levy, and neither the affidavit in the attachment suit, nor the judgment therein foreclosing the lien, is, in a suit for the trial of

the right of property, between the attaching creditor and a claimant to whom the creditor had transferred the property prior to the attachment proceedings, evidence of a fraudulent intent in making the transfer.

3. ASSIGNMENT FOR CREDITORS—FRAUD—ACT OF MARCH 25, 1879, CONSTRUED—The act of March 25, 1879, in relation to assignments for the benefit of creditors, does not compel a debtor to make an assignment for the benefit of his creditors, and a failure on the part of the debtor so to do, is not a fraud on the law.

4. SAME—PREFERENCES—The prohibition   of preferences, in the statute, is operative, only when an assignment is made, and if no assignment for the benefit of creditors has been made, there can have been no violation of, or fraud upon, the assignment law.

5. SAME—CREDITOR—INSOLVENT DEBTOR—PAYMENT OF BONA FIDE DEBT, IN PROPERTY— A creditor may receive payment of an honest debt in property of his debtor, though he may know, at the time, that the debtor's intent in making the payment is, and the necessary effect of his act will be, to place the property beyond the reach of other creditors.

6. EVIDENCE—VERDICT—PRACTICE IN SUPREME COURT—Where there was a conflict in the evidence, the verdict of the jury will not be disturbed by the supreme court.

APPEAL from Washington.    Tried below before the Hon. J. B. McFarland.

On November 18, 1884, Marek & Marek were indebted to Gus. Lewy & Co. in the sum of $1,400.29.    On that date Marek & Marek sold their entire stock of goods (valued by them at $4,200) to Joseph Fischl, the consideration being an indebtedness to Fischl, of $3,000, and certain debts that Fischl assumed to pay.    On November 20, 1884, Gus. Lewy & Co. sued out an attachment against Marek & Marek in the district court of Washington county, on the ground that they had transferred their property with the intent to defraud their creditors, and had it levied on the stock of goods sold to Fischl.    On the same day Fischl claimed the stock of goods as his property, filing claimant's oath and bond as required by law.  On April 7, 1885, Gus. Lewy & Co. recovered judgment against Marek & Marek for the sum of $1,400.29, with a foreclosure of the attachment lien, subject to the trial of the right of property with Fischl.    On September 19, 1885, trial of the right of property was had and resulted in a judgment in favor of Fischl.  From that judgment plaintiffs prosecute this appeal.

The issues upon which the case was tried were as follows:    The claimant's affidavit was in pursuance of the statute.  His answer, filed March 5, 1885, alleged that he claimed the goods under a bill of sale from Marek & Marek, dated November 18, 1884; that the consideration of the sale was recited in the instrument, to-wit., $4,200, $3,000 of which were paid in Mareks' notes to him, and the balance in an assumption of debts of the Mareks, due to other parties.  The bill of sale was made an exhibit to the answer, and filed with it.  The plain-

tiffs, in their pleadings, styled their amended tender of issues, after setting out the issuance of their writ of attachment against Marek & Marek, on November 20, and the levy, thereunder, on the goods conveyed by the Mareks to the claimant, alleged that at the date of the bill of sale, on November 18, the Mareks were indebted to plaintiffs and others in large amounts; that the Mareks were insolvent; that the goods had been bought of plaintiffs and others on credit and had not been paid for, as was well known to Fischl, and that the sale to him was made with the intent to hinder, delay, and defraud the creditors of the Mareks, and especially plaintiffs.

The bill of sale under which Fischl claimed the goods is, in substance, as follows: "This memorandum of an agreement made and entered into November 18, 1884, by and between J. Marek and J. Marek, composing the firm of Marek & Marek, of the one part, and Joseph Fischl, of the other part, witnesseth: That whereas Marek & Marek are justly indebted to Joseph Fischl by note, January 1, 1884, for $3,000, with interest at ten per cent. from date, due at six months, say $3,262.50, and to the following other parties, Walney & Hess $130, Wood & Low $95.00, E. Reichardt $155, Thomas Dwyer $70.00, H. Fisher $15.75, L. J. Lockett $15.40, W. C. C. Association $11.25, Haubelt Bros. $50.00, Sayles & Bassett $100, Chas. Wenar & Co. $69.32, P. W. Connell, for rent, $100, which they are anxious to secure and pay; and, whereas, Joseph Fischl has agreed, in consideration of the transfer and delivery to him of the stock of goods, groceries, provisions, and liquors, etc., hereinafter described, by Marek & Marek, to discharge his debt against them, and assume the payment of the several debts to other parties above enumerated, which agreement and obligation is attested by his signature hereto : Now, therefore, know all men by these presents, that, for and in consideration of the premises, the undersigned Marek & Marek, both in their firm name and as individuals, have bargained and sold, and do, by these presents, transfer and deliver, unto Joseph Fischl, all and singular the stock of groceries and provisions, including liquors, and also store fixtures, safe and desk, owned by them and found in the store known as Connell building, on the north side of the court house square, in Brenham, in the county of Washington, of which an inventory is attached to the copy of this instrument delivered to Joseph Fischl, the stock being valued at the sum of $4,200, and they also transfer to him, Joseph Fischl, the unexpired term of their lease of the storehouse from P. W. Connell. And Joseph Fischl, in consideration of the premises, doth hereby agree and bind himself to pay to the several creditors of Marek & Marek the amounts enumerated above,

and the rents to become due to Connell for the unexpired term of the storehouse, and doth release and discharge the note and interest against Marek & Marek. Signed November 18, 1884, by Marek & Marek, J. Marek and J. Marek and Joseph Fischl.''

The claimant Fischl, testified, that the stock of goods was all the property that Marek & Marek had, that he knew of, and that he knew they owed the plaintiffs and others at the time he purchased the stock of goods; that he bought the goods to save his debt; that, in March or April, 1883, he became a silent partner in the firm of Marek & Marek, and at that time paid into the firm $2,000, and, later on, the sum of $300; that he paid the Mareks in money; that he had for several months been accumulating the money, and had carried it about his person; that he kept a small account at the bank, but carried the bulk of his money on his person, because he considered it safer; that in 1882, when he located in Brenham, he had about $1,500; that he and Marek took stock on Sunday, when he went into the partnership as a silent partner; that no one was present but the Mareks and himself when the stock was taken; that on January 1, 1884, he drew out of the firm of Marek & Marek, and they gave him their note for $3,000, payable in six months, for his interest in the business; that on the morning of that day he went to their store and told them that he wanted his money and would shut them up if it was not paid, and they then proposed to sell out to him; that the Mareks and himself were friendly at the time of the sale to him; that he had a written contract with Marek & Marek when he went into partnership with them, but it was subsequently lost or destroyed; that the sale was made pretty quickly, and an inventory of the goods was taken in half a day.

Joe Marek, one of the firm of Marek & Marek, and a witness for the plaintiffs, testified: that the stock of goods sold to Joe Fischl on November 18, 1884, was all the property they had; that they owed other persons besides those named in the bill of sale; that they owed Gus. Lewy & Co. $1,400.29; that he knew, when he sold out, that the creditors not named in the bill of sale would not be able to make anything; that the firm of Marek & Marek was insolvent, at the time of the sale; that Fischl came to his store and demanded his money, but they could not raise it, and Fischl told them he would give them one hour to get the money or be closed up; that they thought it better to sell than to have an attachment run on their property; that they preferred home creditors, because they were neighbors; that Fischl became a silent partner with Marek & Marek in March, 1883, but no one knew it, not even the book-keeper; that he put $2,300 in money

into the business; that in January, 1884, Fischl drew out and got a note from Marek & Marek for $3,000, for his interest in the firm; that witness' object in making the sale was to pay Fischl; that there was a verbal agreement between Fischl and Marek & Marek, that if there was not enough realized from the stock of goods to pay him and the creditors named in the bill of sale, he was to pay himself, and Marek & Marek was to have the right to say which of the other creditors named in the bill of sale should be paid in full, and which left out; that they had no money on hand the day they sold to Fischl; that Lewy & Co. were writing to them about their claim; that he did not know what became of the books of the firm of Marek & Marek; that they were left in the safe in the store when they sold out to Fischl; that he did not take them out; that the safe was sold to Fischl, and the books ought to be in the safe; that they kept no books showing bills payable and receivable, but kept a memorandum of debts they owed, showing when they fell due; that they did not put Fischl's note in it because they did not want the book-keeper to know anything about it; that June Harris was their book-keeper during the year 1883; that they did not enter in the books the $2,000, or the $300, paid into the business by Fischl when he became a silent partner; that the $2,300 did not appear in the cash account, nor in their bank account; that he did not have the contract of partnership; that the books did not show $3,000 drawn out of the business when Fischl drew out; that their book-keeper, Mr. Harris, did not know up to the time of the sale to Fischl that they owed Fischl anything; that the understanding with Fischl, at the time of the sale, was, that whatever was left after paying his (Fischl's) note, and home creditors named in the bill of sale, was to go to other creditors than those named in the bill of sale, and that he, Marek, was to have the right to name the creditors to whom this surplus was to go.

June Harris, a witness for plaintiffs, testified: that he was then clerking for Joseph Fischl; that he was book-keeper for Marek & Marek from January, 1883, to December, 1883, and from——1884, up to the time they sold out to Fischl, and stayed with Fischl after the sale; that Marek & Marek's books were not left in the store after they sold to Fischl; that they were in the safe before the sale, but after the sale they were missing, and he did not know what had become of them; that the books showed what was owed by the firm and when it became due; that he never saw the Fischl note, did not know that the Mareks were indebted to Fischl, and there was nothing on the books to show it; that he kept the books of Marek & Marek from January, 1883, to December, 1883; that no report was made to him, as book-keeper, of

the money claimed to have been paid into the firm by Joseph Fischl; that he did not know that Fischl was a silent partner, or that he had put anything into the firm; that he heard of the Fischl indebtedness, for the first time, on the day of the sale; that if as much as $2,300 had been put into the business he would have known it, and that if the debts of the firm had been paid off with the $2,300 he would have known it, because he would have had to make the entries in the books; that that much money could not have been paid into the business without his knowing it; that if it had been put into the safe or had been paid to creditors he would have known it; that he kept all of the books, and made all the cash entries; that Fischl never asked to look at the books, and never assumed any authority about the store.

The plaintiffs also introduced in evidence the attachment papers and the judgment in the case of Gus. Lewy & Co. v. Marek & Marek, to show fraudulent intent in the transfer by Marek & Marek. Fischl was not a party to that suit.

The justness of the debts assumed by Fischl in his purchase from the Mareks seems to have been conceded, and the parties to whom they were owing, agreed, it appears, to look to Fischl for their payment.

White was introduced by the defendant, as a witness, and was permitted, over the objection of plaintiffs, to testify that the defendant Joseph Fischl told him, in the spring of 1884, that he had loaned to the Mareks some money, and had indorsed some paper for them. This conversation took place at Fischl's warehouse.

J. S. Newbouer, a witness for the defendant, was permitted to testify, over the objection of the plaintiffs, that Fischl told him that Marek & Marek were owing him, Fischl, a good deal of money.

F. R. Allison, for the defendant, was permitted, over the objection of the plaintiffs, to testify, that Fischl had told him, some fifteen or eighteen months before, that he was a silent partner with Marek & Marek, but did not want it known.

The plaintiffs were not present at, and had no notice of, these conversations. They occurred long prior to the transfer to Fischl, and prior to this controversy.

The special instructions asked by the plaintiffs and refused by the court, and the paragraphs of the court's general charge, objected to by the plaintiffs, are sufficiently indicated in the opinion.

*Garrett, Searcy & Bryan,* for appellants, that the declarations of Fischl made to third persons, were not admissible in evidence to corroborate his testimony in his own behalf, cited: Tucker v. Hamlin,

60 Tex. 171; Weisiger v. Chisholm, 28 Tex. 790; White v. State, 18 Ct. App. 63; Sager v. State, 11 Ct. App. 110; Harmon v. State, 3 Ct. App. 51; Whart. Crim. Ev., sec 690, et seq; 1 Greenleaf on Ev., sec. 98.

On the proposition that the bill of sale under which Fischl claimed title to the goods, was in violation of the assignment law and void, they cited: App. R. S., secs. 17, 18, pp. 5-8; Seeligson & Co. v. Brown, 61 Tex. 183; Donoho v. Fish Bros., 58 Tex. 164; Duncan et al v. Taylor, 63 Tex. 645; National Bank v. Lovenberg, 63 Tex. 506; Miller et al v. Jannett, 63 Tex. 82; Truit v. Caldwell, 3 Minn. 257; Page v. Smith, 24 Wis. 368; Murphy v. Caldwell, 50 Ala. 461.

That the affidavit and the judgment foreclosing the lien in the attachment suit of Gus. Levy & Co. v. Marek & Marek were conclusive evidence of the fraudulent intent on the part of Marek & Marek in making the transfer, they cited: Blum v. Lynch, 2 Wilson Cond. Rep., sec. 779, p. 683; 1 Wharton on Ev., sec. 758 et seq; 2 Wharton on Ev., sec. 1110; Greenleaf on Ev., sec. 522 et seq.

On the question of notice, they cited: Bateman v. McCreight, 1 Tex. Ct. Rep. 264; Humphries v. Freeman, 22 Tex. 50; Traylor v. Townsend, 61 Tex. 146; Edmundson v. Silliman, 50 Tex. 112; White v. Wilson, Cond. Rep., sec 1005; Mills v. Howeth, 19 Tex. 257.

That the burden of proof was on Fischl to show that his debt was a *bona fide* claim, they cited: Watkins v. Edwards, 23 Tex. 447; Hawley v. Bullock, 29 Tex. 217; Bremer v. Case, 60 Tex. 152; Lacoste v. Odam, 26 Tex. 458.

*Scott & Levi*, also for appellants, on the proposition, that an insolvent merchant, or one in contemplation of insolvency, who disposes of all his tangible assets to prefer certain creditors, who know his condition, to the prejudice of his other creditors, contravenes the policy of the assignment law, cited: Duncan, Wyatt & Co. v. Taylor, 63 Tex. 647; Martin v. Hansenan, 14 Fed. Rep. 166.

*Sayles & Bassett*, for appellee, on the proposition, that the declarations of Fischl to third persons were properly admitted in evidence, as tending to repel the inference of fraud sought to be deduced by the plaintiffs from his alleged concealment of his transactions with Marek & Marek; and in corroboration of his testimony, which had been sought to be discredited and impeached by that of other witnesses, cited: 2 Phil. Ev. 814; 1 Greenl. Ev., sec. 469; 1 Starkie Ev. 253; 2 Taylor Ev., secs. 1, 330; Commonwealth v. Wilson, 1 Gray. 337; The People v. Vane, 12 Wend. 78.

That the court did not err in refusing to hold that the bill of sale under which Fischl claimed, was in violation of the assignment law, they cited: Greenleve, Block & Co. v. Blum, 59 Tex., 124; Tidball, Van Zandt & Co. v. La Belle Wagon Works Co., 59 Tex. 291; Schneider v. Sanson, 62 Tex. 201; Inglehart v. Willis, 58 Tex. 306.

ROBERTSON, ASSOCIATE, JUSTICE.—Appellants brought suit by attachment, and caused the seizure of goods in the possession of appellee, who claimed under the statute, and thus this controversy arose between them.

Marek & Marek were the defendants in the attachment suit, and, before the commencement of the suit, had sold the property seized to the appellee, in consideration of the satisfaction of a debt claimed to be due by them to appellee and of appellee's assumption of the payment of several other debts due by Marek & Marek.

Appellee testified, that he had been a dormant partner in the firm of Marek & Marek, and had put into the business $2,300, and that, afterwards, when he dissolved with them, they paid him for his interest $3,000, in their note, due at six months. Appellants introduced proof tending to show that appellee had not been such partner, and that he had not put money in the business. The appellee was then permitted to show, over objection, that, long before the suit, and at a time when he claimed to have been a dormant partner of the Mareks, he stated, in the absence of plaintiffs, that he was such partner. He was also permitted to prove, over objection, that, when plaintiffs were not present he had stated long before this controversy arose that Marek & Marek were his debtors in a large amount. The issue formed by the plaintiffs' evidence was, whether appellee's debt was not fictitious, and the theory of its origin and consideration an invention parented by the necessity of his case. On this issue, the testimony complained of was material. It showed that appellee had the same conception of the facts before the imputed motive could exist that he had at the trial, and certainly was corroborant of his testimony. His declarations were, therefore, properly admitted. 2 Phil. Ev., p. 974; 1 Greenl., sec. 469; Commonwealth v. Wilson, 1 Gray, 337.

The appellant contends, that the sale of the goods by Marek & Marek to appellee was in fraud of the assignment laws, and, therefore, void. The statute does not compel anybody to make an assignment for the benefit of creditors. The failure of Marek & Marek to make an assignment was not, therefore, a fraud on the law. The prohibition of preferences is operative, only when an assignment is made. If the sale to appellee is an assignment, then the law cuts from it

the void features, and passes the title, and the appellee's claim was properly sustained. Blum *v.* Wellbourne, 58 Tex. 157; Keating *v.* Vaughan, 61 Tex. 518.

If there was no assignment for the benefit of creditors, there could be no violation of, or fraud upon, the assignment law.

The goods, when levied upon, were in the possession of appellee. This, under the statute, put upon appellants the burden of proving that the property was subject to the levy. The proof of fraud is, independent of the statute, upon him who avers it. The appellants claim that they proved the fraudulent intent of the Mareks by the introduction of the affidavit for attachment and the judgment foreclosing the attachment lien, and that this shifted the burden upon appellee to prove his innocence of the proven fraud. The affidavit and judgment in the attachment suit could not have the effect claimed. A judgment is not an adjudication of an issue that could not have been made in the case. If the Mareks had appeared in the suit against them, they could controvert the truth of the affidavit only as a basis for the recovery of damages, and, as the writ was levied upon property which they certainly had no claim to, they could not possibly have an action for damages. Cloud *v.* Smith, 1 Tex. 611; Bear *v.* Mark. 63 Tex. 298.

The judgment foreclosing the lien does not affirm the truth of the affidavit, for if, in reconvention for damages, it is proved and found to be false, the judgment nevertheless forecloses the lien.

Besides, appellee was no party to that suit, and if it was necessarily established as the basis of the judgment that the Mareks did intend to defraud their creditors in making the sale to appellee, the judgment would be no proof of the fraudulent intent in a suit against the appellee. Pratt *v.* Jones, Tyler term, 1885.

Several charges were asked by appellants, and refused, to the effect that appellee would have notice of the fraudulent intent of the Mareks, if a prudent person in his situation would have inquired and ascertained the existence of that intent. The refusal to give these instructions is assigned as error. The substance of them was not embraced in the charge of the court, but we think the principle of law contained in the refused charges was not applicable to the case.

In the first place, the main issue relied upon in the court below, as well as in this court, was, that appellee's claim against the Mareks was fictitious. If it was fictitious, of course the appellee knew it, and the charge of the court, that appellee would be bound by the fraud of the Mareks, if he had notice of it, would be sufficient.

Secondly, it is shown by the proof that appellee knew every material circumstance put in evidence by the plaintiffs to prove fraud on the part of the Mareks. If these circumstances were sufficient to convince the jury that the Mareks intended to defraud creditors, the jury would certainly have determined that Fischl, not only had notice, but actually knew of the guilty design.

And lastly, if the debt due Fischl was *bona fide*, and the Mareks actually owed, as it was admitted they did, the other debts provided for in the bill of sale, the purpose of the Mareks in making the transfer to defraud other creditors, actually known by Fischl when he accepted it, would not vitiate the transaction. The law, as recognized by this court, is stated in the case of Greenleve, Block & Co. *v.* Blum, 59 Tex. 126, and the distinction between a creditor and purchaser in the acceptance of such transfers is distinctly announced.

A creditor may receive payment of an honest debt in property of his debtor, though he knows that the debtor's intent in making the payment, and the necessary effect of his act is, to place the property beyond the reach of other creditors. Any other doctrine would deny to the insolvent debtor the right to prefer one creditor over another, and force him and his favored creditor to accomplish the same result through the questionable means of a friendly attachment or other legal process.

Whether appellee's claim against the Mareks was just or not, was fairly submitted to the jury, and the verdict necessarily affirms that it was. How that and the other debts mentioned in the bill of sale, if just, could be paid by such transfer as was made, the jury was informed in substantial accordance with the principles laid down in the case already cited. Greenleve *v* Blum, 59 Tex. 126.

The appellants complain of the refusal of the court to charge the jury that the burden of proving the justice of his claim against the Mareks was upon the appellee. Both parties had introduced their evidence upon that issue, and the jury were instructed to find for appellants, if they believed Fischl's debt was fictitious. Their belief in this respect could not have been affected by the charge requested. On the other hand, under the charge, the jury had to find that the debt was just in order to find for the appellee. If it was error to refuse the charge, the appellants have suffered no injury from it. Such charge could not properly have influenced the result.

It has already incidentally appeared in this opinion, that, on the main issue, the genuineness of Fischl's claim against the Mareks, there was a conflict of testimony. The direct evidence on the question was in favor of the appellee: on the other side, were strong and per-

suasive circumstances.    That a verdict in this condition of the evidence will not be disturbed by this court, has been many times decided in each of our volumes of reports.

We find no error in the judgment, and it is accordingly affirmed.

AFFIRMED.

[Opinion delivered January 22, 1886.]