LIBERTY MUTUAL INSURANCE COMPANY, Appellant,

v.

Laura E. TAYLOR et vir, Appellees.

No. 16307.

Court of Civil Appeals of Texas.

Dallas.

Feb. 7, 1964.

Leachman, Gardere, Akin, Porter & DeHay and Edward E. Crowell, Jr., Dallas, for appellant.

Wilson & Menaker, Dallas, for appellees.

DIXON, Chief Justice.

Liberty Mutual Insurance Company has appealed from a judgment awarding Laura E. Taylor, joined *pro forma* by her husband, James E. Taylor, workmen's compensation for total permanent disability.

In its first point on appeal appellant says that the court erred in refusing to strike the testimony of Dr. Herbert Kresh because the doctor based his opinion in part upon the history of the case as given him by appellee Laura E. Taylor. Dr. Kresh, the only medical witness to testify, did not treat appellee. He did examine her at the request of her attorney and thereafter testified in her behalf.

Before the doctor testified hospital records of appellee's treatment and surgery had been introduced in evidence without objection. These records included the case history given by appellee when she entered the hospital.

Dr. Kresh testified that he went over all the hospital records, examined appellee and also took a case history from her himself. Objection was made by appellant to the doctor's referring to any case history, whether taken by himself or obtained from the hospital records. The court sustained the objection with reference to the case history taken by Dr. Kresh, but permitted him to refer to anything in evidence, including the hospital records.

The doctor was then asked a lengthy hypothetical question which concluded as follows:

"Based upon all of these things and any information that is contained in those three hospital records which are in evidence before you, Doctor, and based upon your actual examination of this woman, Doctor, I ask you if you have an opinion as to whether or not the incident that I related of January 18, 1962 was or was not a producing cause of the difficulties and disabilities such as they may be that Mrs. Taylor now has or has had since that date?"

To this question the doctor gave an affirmative answer.

On cross examination Dr. Kresh stated that in giving his opinion from the witness stand he had taken into consideration the history of the case as told to him by the patient. No objection or motion to strike was made at the time, but a motion to strike was made later.

It is well settled that an examining physician, as distinguished from a treating physician, may not testify as to the condition of the patient if his opinion is based upon the history of the case as related to him by the patient. However, if an examining physician does not rely upon the statement of the patient other than to determine what part of the body is to be examined, but bases his opinion entirely upon his objective finding, his testimony is admissible. Texas Employers Ins. Ass'n v. McMullin, Tex.Civ.App., 279 S.W.2d 699, 701–702, and cases there cited.

The situation in our case at this point in the proceedings was that Dr. Kresh's testimony was open to the objection that he had based his opinion in part upon the case history told to him by the patient. But on redirect examination he gave testimony which changed the situation.

We quote from his testimony on redirect examination:

"Question: Doctor, * * * in answering my questions * * * were you taking into account the history as given to you by Mrs. Taylor or the history as you got it from the actual examination and from the hospital records?

"Answer: Both, actually.

"Question: All right now, for the moment leaving out the history as

given to you by the patient, would there be any substantial difference in any respect about your testimony based only upon the history contained in the hospital records?

"Answer: No, sir, there would be no difference, they are basically the same.

"Question: Would your answer to my question, in particular the hypothetical question, have been the same, leaving out the history of the patient and taking into account only the history as shown in the hospital records and the actual examination of Mrs. Taylor?

"Answer: It would still be the same.

"Question: And would your answer to my question about the disability based upon the definition I gave you—based upon that particular definition, would that remain the same?

"Answer: It would remain the same."

Immediately after the redirect testimony of the doctor had been concluded appellant moved to strike his opinion testimony. The motion was overruled.

■ From the above quoted testimony it will be seen that the doctor on redirect examination testified that his opinion would be the same if, leaving out the history of the case as told to him by the patient, he based his opinion only on the history as shown in the hospital records and the actual examination of Laura E. Taylor. This we believe made the doctor's opinion testimony admissible. The court properly overruled the motion to strike. Texas Employers Ins. Ass'n v. Hall, Tex.Civ.App., 295 S.W.2d 478, 480–481, ref. n. r. e.

Appellant says that the doctor should not be permitted to take into consideration the case history as shown in the hospital records any more than he should be permitted to take into consideration the case history as told to him at appellee's examination. Appellant contends that the doctor should not

be permitted to testify to an opinion based on either case history.

We do not agree with appellant. A patient is sometimes sent to a doctor for examination only, not treatment, for the purpose of enabling the doctor later to testify for the patient. Under such circumstances a patient might be tempted to exaggerate or even prevaricate in narrating his case history. For that reason a case history given to the examining doctor is excluded, since it is likely to be merely a self-serving declaration.

■ On the other hand, a case history given to a doctor by a patient entering a hospital for treatment and surgery will be given greater credence, for the patient will almost surely be interested mainly in getting well and there is very little motive for a false or questionable case history.

We overrule appellant's first point on appeal.

■ In its second point, appellant complains of the court's overruling its objection to testimony by the witness Frances Toon regarding statements made by appellee.

The occurrence of any injury to appellee on the occasion in question was a contested matter. Appellee offered the testimony of the witness Mrs. Toon to the effect that while riding to work with appellee on Friday and Saturday following the Thursday, January 18, 1962 when the alleged injury occurred, appellee told Mrs. Toon that she had hurt her back sitting in a high chair while on the job. This statement was made prior to the time she entered Baylor Hospital on January 31, 1962. Objection was made by appellant that the question which elicited the above testimony called for hearsay.

Appellee justifies the question and the answer of the witness on the ground the declarations were admissible in answer to appellant's recent charge of fabrication on the part of appellee.

The record shows that after appellee had been in Baylor Hospital for several days the question came up as to who was going to pay hospital expenses. Appellee was covered by group insurance policies from Dresser Industries, Inc., her employer, which policies did not include coverage for injuries sustained in the course of employment. Appellant in examining appellee's husband brought out this testimony:

"Question: And, isn't it a fact, Mr. Taylor, that you and your wife had already notified the hospital that under these policies that have been introduced into evidence, number 14 and 15, that that was what was going to take care of the hospital bill?

"Answer: Yes, sir.

"Question: And isn't it a fact that when you found out that that wasn't going to work that you and your wife then decided that you would call the company, Dresser, and would tell them you had been injured on the job—or, she'd been injured on the job?

"Answer: No, sir.

\* \* \* \* \* \*

"Question: And when you went to the hospital and took these policies with you, it was with the idea in mind that you had an injury here that did not occur on the job and would be covered by these policies?

"Answer: No, sir.

"Question: You·deny that?

"Answer: Yes, sir."

It seems to us that the above cross examination by appellant is in effect a charge that appellee and her husband fabricated their claim that her injury occurred on the job. This is especially true in the light of the subsequent testimony of appellant's witness Dorothy Mitchell, a fellow worker of appellee's at Dresser Industries, Inc., who testified appellee did not complain or say anything while she was on the job indicating she had hurt herself while she was on the job.

Our courts have held that where a defendant introduces evidence that plaintiff failed to mention an alleged injury at a time and under circumstances when he could reasonably have been expected to do so, the plaintiff may introduce testimony showing that he did mention his injury at or near the time of the injury. When such a situation is presented testimony of the statements of a plaintiff is not considered hearsay and is admissible. Lewy v. Fischl, 65 Tex. 311; Houston & Texas Central Ry. Co. v. Fox, 106 Tex. 317, 166 S.W. 693; Aetna Ins. Co. v. Eastman, 95 Tex. 34, 64 S.W. 863; Texas Employers Ins. Ass'n v. Thames, Tex.Civ.App., 236 S.W.2d 203. We think the situation in the instant case comes within the rule.\*

\* We are aware of the recent case of Skillern & Sons, Inc. v. Rosen, Tex., 359 S.W.2d 298, wherein our Supreme Court held that certain testimony was hearsay and was not admissible under the doctrine of prior fabrication. Our present holding is not in conflict with the holding in the Rosen case as an analysis of the two cases will show.

(1) In the Rosen case the trial court in the exercise of its discretion excluded the testimony in question. The Court of Civil Appeals reversed the judgment of the trial court. To have affirmed the judgment of the Court of Civil Appeals the Supreme Court would have had to say that the trial court had abused its discretion in excluding the testimony. This the Supreme Court would not go so far as to say. Therefore the judgment of the Court of Civil Appeals was reversed and that of the trial court was affirmed.

An entirely different situation is presented in the instant case. Here the trial judge admitted the testimony in question. To reverse the judgment of the trial court we would have to say that the trial court abused its discretion in admitting the evidence. Like the Supreme Court in the Rosen case, we cannot say that the trial court abused its discretion in its ruling on the challenged testimony.

(2) In the Rosen case it was the plaintiff herself who initiated and injected the issue of her prior fabrication into the case by testifying that she left the drug store in question without speaking to any employee therein about her injury. The

■ There is another reason why we believe the admission of the testimony of the witness Toon is not reversible error. After appellant had in effect accused appellee and her husband of fabricating her claim that she was injured on the job, her husband testified concerning appellee's arrival at her home on the afternoon of the day of her injury. We quote from his testimony:

"Well, she drove up into the drive. I was sitting on the divan next to the window and it took her unusually long to come in. I got up and went to the door and went partly out to the car, I don't know whether I went partly or all the way, but I remember helping her in the house *and she said she had hurt her back while sitting out there on those high chairs.*" (Emphasis ours.)

No objection was made to the introduction of the above testimony. Later the testimony of Mrs. Toon was offered and admitted. Even if we were to hold that it was error to admit Mrs. Toon's testimony (we do not so hold) we would also hold that it is harmless error. The Toon testimony is really only cumulative of what appellee's husband had already testified to without objection. Carrick v. Hedrick, Tex.Civ.App., 351 S.W.2d 659; Perez v. San Antonio Transit Co., Tex.Civ.App., 342 S.W.2d 802; State by and through City Council of Daingerfield v. Walker, Tex.Civ.

App., 334 S.W.2d 611; Vrazel v. Bieri, Tex.Civ.App., 294 S.W.2d 148; Texas Employers Ins. Co. v. Moore, Tex.Civ.App., 284 S.W.2d 175; Rule 434, Texas Rules of Civil Procedure.

Appellant's second point is overruled.

The jury gave affirmative answers to issues which inquired whether (1) Laura E. Taylor sustained an injury on or about January 18, 1962; (3) she sustained any total incapacity following the injury; (4) the injury was a producing cause of the total incapacity; (5) the beginning date of such total incapacity was January 29, 1962; and (6) the total incapacity will be permanent. The jury gave a negative answer to Special Issue No. 8 which inquired whether appellee had sustained any partial incapacity.

In its third, fourth and fifth points, its ninth to seventeenth points inclusive, and its twentieth to twenty-third points inclusive, appellant contends that there is either no evidence, or there is insufficient evidence to support the jury's answer to the above special issues. The nature of these points requires us to review the material evidence bearing on the questions raised in the points.

Appellee had been injured before. In December of 1959 she had sustained an injury to her back and side while employed by Sears Roebuck & Company, but continued to work for about ten months there-

---

defendant had not accused her of remaining silent when she might have been expected to speak. She herself brought out the fact that she remained silent at a time when she might reasonably have been expected to speak. Then she sought to explain her silence by introducing evidence of statements later made by her. The Supreme Court held that she could not take advantage of the exception to the hearsay rule to rebut an inference which she raised by her own testimony on direct examination.

Again an entirely different situation is presented in the instant case. Here the defendant company in the cross examination of appellee's husband injected the prior fabrication issue by accusing plaintiff and her husband of fabricating her

story that her injury occurred on the job. The defendant in this case, appellant here, plainly implied that after the plaintiff, appellee here, had entered the hospital she and her husband learned that the two group policies did not cover her injuries, therefore she then changed her story to bring her case within the workmen's compensation policy of her employer by claiming she was injured on the job. Under these circumstances plaintiff was entitled to refute appellant's charges by showing that prior to the time she entered the hospital she had told her husband and the witness Toon that she was injured on the job. This statement was made before the alleged motive to change her testimony arose while she was in the hospital.

after. However, her injury grew worse with the result that in October 1960 she was hospitalized for three weeks. In August 1961 she returned to work at Sears Roebuck & Company, but after one week her employment was terminated due to a general layoff. In December 1961 appellee compromised her workmen's compensation suit for this first injury. The jury in the present case attributed 35 percent of appellee's present total permanent disability to this prior injury.

In October 1961 through the Texas Unemployment Office appellee, after successfully passing a company physical examination was employed by Dresser Industries, Inc. Her work was testing transformers. Her back did not pain her, though she did suffer some discomfort. She had resumed her normal activities. She changed from her regular job three or four days prior to the date of her second injury. She went to work in the production department where she was engaged in taping coils.

On January 18, 1962 she sustained the alleged injury which is the basis of the present suit. She had been given a chair which was too high for her. Her feet would not touch the floor. She was in a strain all day. Some time after the mid-afternoon "break" she pushed her chair out from the bench and "was balancing myself kind of on my toes to try to get some— in a comfortable position and this pain hit me in my right low back and ran all the way down my legs." She "was sitting on the edge of the chair balancing myself with my toes, * * *. I was just sitting up there with my legs dangling and I don't know how long * * *, the pain hit me in my back and run down my leg and it was as if a tight band was around the calf of my leg and I had to untie both of my shoes, the pain went to the top of both feet." She took two Bufferin tablets and remained in the lounge until she saw it was near quitting time.

She drove home in her own car, but it took a while to get out of the car. Her husband helped her into the house. She told him "she had hurt her back while sitting out there on those high chairs." She applied some Bengay and took more Bufferin tablets.

She returned to work the following two days, a Friday and a Saturday. She did not work the following Monday and Tuesday because of an ice storm and also because of her severe pain. On Wednesday she went to work, but had to leave after half a day.

On Monday, January 29, 1962 she saw Dr. T. Wiley Hodges, who recommended hospitalization. No room was immediately available so she could not enter the hospital until two days later. She remained in the hospital for a month. During that time she was treated with intravenous medicine twice daily, medication by mouth and hypodermic injections and physical therapy. She was placed in traction. A myelogram was performed. It showed a bilateral defect. She left the hospital February 29, 1962 in a wheel chair.

She re-entered the hospital April 16, 1962. The next day surgery was performed by Dr. Hodges. The diagnosis was "ruptured disc L-4-5 with nerve root irritation, left." Her disc was found to be tense and bulging. An incision was made over the lower part of the sacrum, and spinous processes were removed. A bone graft was obtained from a second incision.

Seventeen days after surgery appellee went home. She stayed in bed six weeks in a metal brace. She wore the brace five and a half months longer and did not dispense with the brace altogether until nine months after surgery. She got somewhat better after surgery, but she still has difficulty with her left side, low left back and left leg. She started getting worse after removing the brace and the pain in her back is worse.

She does very little house work, no laundry, no sweeping or mopping, and has to lie down at intervals during the day and use hot packs twice a day. Her testimony of her difficulties since surgery is supported

by the testimony of a neighbor, a maid, her husband and her mother.

Appellant offered no evidence.

The jury found that 65 percent of appellee's total permanent disability was caused by her injury of January 18, 1962.

 We are of the opinion that the evidence is sufficient to support the jury's answers. Appellant's third, fourth and fifth points and its ninth to seventeenth points inclusive and its twentieth to twenty-third points inclusive, are overruled.

In its sixth, seventh and eighth points appellant says that the court erred (1) in failing to submit an issue requiring the jury to determine whether appellee sustained any incapacity as a result of the alleged injury; (2) in submitting a charge which foreclosed the jury's finding that appellee sustained no incapacity as a result of the alleged injury; and (3) in commenting on the evidence by submitting a charge which foreclosed the jury from finding that appellee sustained no incapacity of any kind.

Appellant requested submission of an issue inquiring whether appellee's injury, if any, naturally resulted in her incapacity to work in any degree for any length of time.

The Workmen's Compensation Act recognizes total incapacity and partial incapacity. Art. 8306, Secs. 10 and 11, Vernon's Ann.Civ.St. Issues Nos. 3 and 8 as submitted inquired respectively whether appellee sustained *any* total incapacity or *any* partial incapacity. We do not consider that these issues comment on the evidence. Appellant's requested issue would merely have submitted another phase, or a different shade of Issues Nos. 3 and 8 as submitted by the court. Rule 279, T.R.C.P. Appellant's sixth, seventh and eighth points are overruled.

In its eighteenth and nineteenth points appellant contends that there is no evidence, or there is insufficient evidence, to sustain the jury's answer to Special Issue No. 14. In their answer to this issue the jury found that the reasonable value of medical, hospital and nursing care and facilities for the reasonably necessary treatment of appellee naturally resulting from the injury of January 18, 1962 was $3,675.-50.

Medical, nursing and other bills were introduced in evidence. Appellee testified that the services had been received. When asked whether a charge of $925.00 for treatment and surgery by Dr. T. Wiley Hodges was reasonable, Dr. Kresh testified: "I would say so, that is the usual fee for this type of injury." When shown other bills Dr. Kresh was asked whether the charges shown were reasonable and necessary. He answered, "Yes, these are standard, routine hospital charges, they are not out of line in any way."

Appellant's eighteenth and nineteenth points are overruled.

We find no reversible error in the record. The judgment of the trial court is affirmed.

Affirmed.

